| | |
|---|---|
| FY01 | 7.5% |
| FY02 | 6.5% |
| FY03 | 5.5% |
| FY04-FY08 | 5.0% |
| FY09 & later | 4.5% |

The health cost trend numbers that Mercer used were much too low, significantly underestimating the amount by which health care costs should be assumed to increase. As Mercer knew, given the number of beneficiaries and the long time period involved, a change of just a few percentage points in the assumed health cost trend will have a huge effect on calculated liabilities. Accordingly, Mercer's error in choosing a health cost trend rate significantly understated the Plans' future benefit obligations and caused Mercer to calculate an employer contribution rate that was insufficient to meet true future obligations.

45. Second, Mercer compounded this error by failing adequately to monitor its health cost trend assumptions. Rather than determining the health cost trend annually, providing each year a new set of projections based on current real-world health conditions, Mercer calculated the health cost trend only every five years. For the next four years, Mercer applied its prior assumptions, without determining whether available information about health care costs required a change.

46. Because Mercer failed to monitor its assumptions each year, its valuation reports failed to reflect escalations in real-world health costs. For example, Mercer steadfastly maintained its projection that health care costs would grow by only

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____ CI

Page 14 of 27

**EXHIBIT A**
**Page 14 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 1 of 14

7.5% in fiscal year 2001 even after actual health care costs increased by 20% in both calendar year 1999 and 2000 and DRB projected costs to grow by 15% in calendar year 2001.

47. Third, Mercer failed to take into account real-world data in determining the health care premium to use in calculating expected health care costs. Mercer calculated health care costs for future years by multiplying an assumed health care premium for the current year by the assumed percentage rate of increase. Therefore, an error in the current year's premium would affect all future years. Each year, DRB and the Plans informed Mercer of the actual health care premiums the Plans were paying. Rather than using these real-world premiums each year, Mercer looked at real-world data only every five years. In the intermediate four years, Mercer calculated the health care premium by taking the prior year's premium and increasing it by Mercer's health cost trend percentage for that year. Even as health care premiums continued to increase in the real world, Mercer continued to ignore actual data and to ignore the fact that its assumed costs were moving further off track each year. For this reason as well, Mercer underestimated the Plans' true future health care liabilities and recommended unreasonably low employer contribution rates.

48. In addition to these errors, Mercer failed to analyze the separate components of health care costs or evaluate the health care needs of different groups within the population of the Plans in the manner required of a competent actuary. Medical costs typically vary based on age, and the costs of prescription drugs change at a different rate than do other medical costs. Until 2005, Mercer ignored these issues,

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____ CI

Page 15 of 27
**EXHIBIT A**
**Page 15 of 27**

Case 1:08-cv-00002-HRH    Document 1-3    Filed 01/07/08    Page 2 of 14

failing to consider differences between prescription drug costs and other health care costs, and addressing population aging only by bluntly dividing Plan participants into "over 65" and "under 65" categories. Mercer made these basic errors even though it had been criticized as early as 1995 for not properly analyzing the age distribution of the population. In a routine 1995 actuarial audit, the firm of Foster Higgins criticized Mercer's method and recommended that Mercer modify its health care assumptions "to reflect the age of your retiree group." Mercer ignored this advice until 2005.

49. According to figures reported by Mercer itself in the 2002 valuation reports for PERS and TRS, Mercer's erroneous calculations of the health care cost trend and the health care premiums caused Mercer to understate the Plans' liabilities by approximately $1.3 billion.

### Coding Errors

50. A second significant category of Mercer's errors are "coding errors," errors in entering information about Plan benefits and provisions into Mercer's computer models. As Mercer knew, an actuary's work depends on correct entry of data into actuarial algorithms. Because the algorithms are applied to tens of thousands of participants and beneficiaries, coding errors can cause massive mistakes, and competent actuaries take care to prevent them. Mercer failed to do so.

51. Mercer's coding errors included:

(a) Incorrectly entering, and thus significantly overstating, the reimbursement paid by Medicare for certain PERS members. This understated PERS's liabilities;

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-___-CI

Page 16 of 27

**EXHIBIT A**
**Page 16 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 3 of 14

(b) Assuming that certain retired employees of PERS and TRS would make contributions toward their health benefits until age 65, when, in fact, those employees contribute only until age 60. Mercer thereby overestimated the employees' future contributions and underestimated the Plans' liabilities;

(c) Ignoring certain salary increases based on merit and seniority, thus underestimating the salary-based benefits to which employees would be entitled;

(d) Assuming that certain retired employees of PERS members would defer health care benefits until age 60, even though those employees are entitled to full health care benefits at age 50, thereby underestimating PERS's liabilities;

(e) Ignoring survivor benefits for the spouses of certain employees of PERS and TRS members, thereby underestimating the Plans' liabilities; and

(f) Omitting service beyond the normal retirement age when projecting certain disability benefits, underestimating the Plans' liabilities.

52. These basic errors show that Mercer failed to provide the care and attention the Plans contracted for and deserved. In view of the size of PERS and TRS, the coding errors had immense consequences. Taken together, they caused Mercer to understate the Plans' liabilities by more than $500 million.

## The Milliman Audit

53. In 2002, the Boards and the Plans hired another prominent actuarial firm, Milliman, Inc., to conduct a routine audit of Mercer's work. Milliman's limited assignment was to "review the work of Mercer to see if it was reasonable, consistent

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 4 of 14

and accurate." Milliman's audit report, issued in October 2002, revealed for the first time Mercer's major errors in calculating expected health care costs.

54. The Milliman audit report noted that "One of the most critical assumptions in the [actuarial] valuation is the expected increase in medical costs." Milliman concluded, however, that several of Mercer's actuarial assumptions used in calculating health care costs were not "reasonable and appropriate." Milliman criticized each of the three major health care errors committed by Mercer that are described above.

55. Milliman found that Mercer's health cost trend assumptions were far too low. Rather than the figures Mercer was then using – 7.5 percent in FY2001, trending down to 4 percent in FY2014 – Milliman's "healthcare actuaries would have recommended the assumption start within a range of 9% to 11% in 2001 with a gradual decline to about 5%."

56. Milliman also disapproved of Mercer's decision to revisit the health cost projections only every five years, advancing one year through the assumed progression in each of the four intervening years. Milliman determined that Mercer should revisit the assumption annually, and that simply moving one year down the schedule without a searching review was an error: "We recommend that this assumption be reviewed prior to every valuation until such time as medical costs have stabilized close to the rate of price inflation. In our opinion, the 2001 valuations should not have simply moved one year down the schedule without a thorough review."

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____ CI

Page 18 of 27
**EXHIBIT A**
**Page 18 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 5 of 14

57. Milliman also criticized Mercer's failure to use available current data on health care premiums. Milliman warned that "Given the recent history of medical cost increases, the Mercer method can significantly understate liabilities if the actual increases are greater than the assumed increases." Milliman found that Mercer's approach was unreasonable, producing inaccurate results:

> Mercer anchored the blended premium several years ago and has escalated it by the assumed increases. Therefore, the blended premium used in the 2001 valuations was $577.40 when the actual blended premium was $668.00. This means the valuations are using a starting point for the projection of future medical costs that is almost 14% lower than the current blended premium. It would take three years for the assumed premium to catch up with the actual premium if there is no medical inflation during that time. This does not appear reasonable to us.

Milliman recommended that "the valuations always adjust the starting point for future projections based on the latest actual premium levels."

58. Milliman's report also revealed for the first time several of Mercer's coding errors, including Mercer's incorrect use of salary data and incorrect projection of disability benefits.

59. After communicating its findings to Mercer, Milliman presented the results of its audit to a joint meeting of the Boards on October 24, 2002. Mercer's actuaries attended that meeting. Tellingly, Mercer made no effort to mount any significant defense of its work. It accepted without debate all of Milliman's criticisms of its health care calculations and coding errors.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____ CI

Page 19 of 27

**EXHIBIT A
Page 19 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 6 of 14

60. The Mercer representatives at the meeting did not reveal that Mercer's own health care actuaries agreed with Milliman's criticisms. In October 2002, in response to the Milliman audit, Mercer's "State of Alaska Team" actuaries sought the advice of a Mercer actuary who was a health care expert. Like the Milliman actuaries, this Mercer health care actuary concluded in an internal memo that the health cost trend assumptions Mercer was using were "low." The memo observed that it "seems unrealistic to expect a sudden decrease in" the trend rate "in the next two to three years." This health care actuary concluded that the trend assumption that the State of Alaska Team was using "falls below the lower end of the trend range recommended by the AFSC [Mercer's own Actuarial Finance Steering Committee] and is also below the 20th percentile of valuation trend assumptions for Mercer valuations from 2001." Worse, the effect of the "low trend assumption may also be compounded by a cost per retiree assumption that is currently 13.6% below the actual premium."

61. Mercer kept this analysis secret from the Boards and DRB. The internal memo describing the analysis was disclosed only years later, when the Plans demanded that Mercer disclose its work papers in connection with the investigation of this case.

### Damage to the Plans

62. Taken together, Mercer's health care errors and coding errors, manifestations of Mercer's persistent disregard for its contractual and professional responsibilities to PERS and TRS, caused Mercer to undervalue PERS' and TRS' liabilities by at least $1.8 billion.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-_____ CI
Page 20 of 27
**EXHIBIT A**
**Page 20 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 7 of 14

63.     The opportunity to raise those funds from the participating employers as the obligations were incurred is gone, as is the participating employers' opportunity to raise the needed funds from taxpayers and other sources of revenue. Mercer's errors have frustrated the Plans' abilities to meet the very funding goals that they explained to Mercer, that Mercer understood, and that Mercer was hired to help the Plans meet.

64.     As Mercer anticipated, the employers participating in PERS and TRS make spending decisions each year based, in part, on the contribution rates adopted by the Boards on the basis of Mercer's actuarial valuations. The funds that the Boards would have otherwise raised were never collected from taxpayers or have been spent by employers on governmental obligations and services. Employers cannot simply save now to fund benefits for which they should have saved years ago. Nor can they reverse the expenditures they made years ago in reliance on Mercer's actuarial calculations.

65.     Absent a recovery of damages, those employers find themselves in exactly the position that the Boards worked to prevent: the employers must fund benefits for current workers and, at the same time, pay off unexpectedly high past liabilities.

66.     The Plans' goal to fund an employee's future benefits during that employee's working lifetime also cannot be achieved. Instead, participating employers, while straining their finances to fund the benefits of current employees, must now make contributions to fund benefits for past employees long after their working lifetimes.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____CI

Page 21 of 27
**EXHIBIT A**
**Page 21 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 8 of 14

67. Mercer was retained to help prevent just these problems. Instead, its misconduct, negligence and inattention has injured the Plans. It is the actuary's task – it was Mercer's duty – to calculate properly and reasonably the amount that the Boards needed to collect in order to meet their funding goals. Had the Boards known the Plans' true liabilities, they would have taken measures necessary to ensure that PERS and TRS were fully funded. Instead, in breach of its duties, Mercer underestimated the Plans' liabilities and damaged the Plans by the amount of the underestimated liabilities.

68. Mercer's errors also caused the Plans to commit to obligations they would not otherwise have incurred. Relying on Mercer's underestimation of the Plans' liabilities, the Boards voted to award more than $140 million in Ad Hoc Post-Retirement Pension Adjustments, and the Commissioner of Administration concurred. Those benefits would not have been awarded had Mercer provided accurate valuations. Now awarded to Plan participants, those benefits cannot be rescinded.

## FIRST CAUSE OF ACTION

### (Professional Negligence and Malpractice)

69. The ARM Board repeats and realleges the allegations of paragraphs 1 through 68.

70. Mercer owed the ARM Board and the Plans a duty to use such skill, prudence, and diligence as other members of the actuarial profession commonly possess and exercise.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-____ CI

Page 22 of 27

**EXHIBIT A**
**Page 22 of 27**

Case 1:08-cv-00002-HRH  Document 1-3  Filed 01/07/08  Page 9 of 14

71. By its persistent errors and failure to act in accordance with its professional responsibilities, Mercer breached that duty.

72. The ARM Board and the Plans reasonably and properly relied upon Mercer's advice.

73. As a direct, proximate, and foreseeable result of Mercer's breach of its duty, the Plans sustained damages in an amount to be determined at trial, but no less than $1.8 billion.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

74. The ARM Board repeats and realleges the allegations of paragraphs 1 through 73.

75. Mercer entered into a series of written agreements with DRB to serve as the Plans' actuary. Among other things, these agreements obligated Mercer to provide accurate and reliable actuarial services on behalf of PERS and TRS and to exercise due care in performing services for the Plans.

76. The Plans and the Boards are intended and/or third-party beneficiaries of those agreements.

77. The ARM Board, the Boards, DRB, and the Plans performed all of their obligations under the contracts with Mercer.

78. By repeatedly committing errors in providing actuarial services to the Plans, the Boards, DRB, and the ARM Board, and in failing promptly to discover and disclose those errors, Mercer breached its contractual obligations.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-_____ CI

Page 23 of 27
**EXHIBIT A**
**Page 23 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 10 of 14

79. As a direct and foreseeable consequence of Mercer's repeated breaches of its obligations under the agreements, the Plans have suffered damages in an amount to be determined at trial, but in no event less than $1.8 billion.

### THIRD CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

80. The ARM Board repeats and realleges the allegations of paragraphs 1 through 79.

81. Under its agreements with DRB, Mercer owed the duty of good faith and fair dealing implied in all contracts governed by Alaska law.

82. The ARM Board, the Boards, DRB, and the Plans performed all of their obligations under the contracts with Mercer.

83. By repeatedly committing errors in providing actuarial services to the Plans, the Boards, DRB, and the ARM Board, and in failing promptly to discover and disclose those errors, Mercer violated its implied duty of good faith and fair dealing.

84. As a direct and foreseeable consequence of Mercer's breach of its duty of good faith and fair dealing, the Plans have suffered damages in an amount to be determined at trial, but in no event less than $1.8 billion.

### FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

85. The ARM Board repeats and realleges the allegations of paragraphs 1 through 84.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al; 1JU-07-____ CI
Page 24 of 27
**EXHIBIT A**
**Page 24 of 27**
Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 11 of 14

86. Mercer made false representations, including regarding its use of reasonable actuarial methods and assumptions in rendering actuarial advice to the Plans, the Boards, DRB, and the ARM Board, regarding its calculation of liabilities of the Plans and Plan contribution rates, and regarding the qualifications and abilities of the individuals who performed work for the Plans.

87. These representations were materially false and Mercer, in the exercise of reasonable care, would and should have known of their falsity.

88. Mercer was required to take reasonable care to insure that its representations were accurate.

89. The Plans and the Boards reasonably and justifiably relied on Mercer's representations.

90. As a direct, proximate, and foreseeable result of Mercer's negligent misrepresentations, the Plans have suffered damages in an amount to be determined at trial, but in no event less than $1.8 billion.

## FIFTH CAUSE OF ACTION

**(Unfair Trade Practices under Alaska's
Unfair Trade Practices and Consumer Protection Act, AS 45.50.471)**

91. The ARM Board repeats and realleges the allegations of paragraphs 1 through 90.

92. Mercer entered into a series of commercial agreements with DRB to serve as the Plans' actuary.

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-_____ CI

Page 25 of 27
**EXHIBIT A**
**Page 25 of 27**

Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 12 of 14

93. In connection with these agreements, Mercer made false and misleading representations, including regarding (a) the methods and assumptions used to render actuarial advice to the Plans, the Boards, DRB, and the ARM Board; (b) calculation of the Plans' liabilities; (c) calculation of Plan contribution rates; and (d) the qualifications and abilities of the individuals who performed work for the Plans.

94. These false and misleading representations in fact misled and deceived the Plans, the Boards, DRB, and the ARM Board in connection with the services provided by Mercer violation of Alaska's Unfair Trade Practices and Consumer Protection Act, AS 45.50.471.

95. As a direct, proximate, and foreseeable result of Mercer's conduct described herein, the Plans have suffered damages in an amount to be determined at trial, but in no event less that $1.8 billion, subject to trebling under the Unfair Trade Practices and Consumer Protection Act.

WHEREFORE, the ARM Board requests judgment awarding:

1. Damages in an amount to be determined at trial, but in no event less than $1.8 billion;

2. Treble damages under AS 45.50.531;

3. Pre- and post-judgment interest at the legal rate;

4. The costs and expenses of this action, including attorneys' fees under AS 45.50.537 and as otherwise provided by law; and

COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-___ Cl
Page 26 of 27
**EXHIBIT A**
**Page 26 of 27**
Case 1:08-cv-00002-HRH   Document 1-3   Filed 01/07/08   Page 13 of 14

5. Such other and further relief as the Court deems just and proper.

DATED this _____ day of December, 2007 at Juneau, Alaska.

TALIS J. COLBERG
ATTORNEY GENERAL

By: 

Michael A. Barnhill
Assistant Attorney General
Alaska Bar No. 9311063

Of Counsel:
Lewis R. Clayton
Eric Alan Stone
Kerry Quinn
Colin C. McNary
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Michael Lessmeier
Alaska Bar No. 7910082
LESSMEIER & WINTERS LLC
Vintage Business Park
3000 Vintage Boulevard, Suite 100
Juneau, AK 99801
(907) 796-4999

THIS CASE FORMALLY ASSIGNED TO
JUDGE PATRICIA COLLINS
BY ORDER OF THE PRESIDING JUDGE

I certify that this is a full, true
and correct copy of an
original document on file in
the Alaska Trial Courts at
Juneau.
Witness my hand and the
seal of this court

1-4-08   SH
Date     Magistrate/Clerk



COMPLAINT
AK Retirement Mgmt Board et al. v. Mercer (US) Inc., et al.; 1JU-07-_____ CI

Page 27 of 27

**EXHIBIT A**
**Page 27 of 27**