IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALASKA RETIREMENT MANAGEMENT )
BOARD on behalf of STATE OF ALASKA )
PUBLIC EMPLOYEES' RETIREMENT )
SYSTEM and STATE OF ALASKA )
TEACHERS' RETIREMENT SYSTEM, )
                                                 )
                        Plaintiff, )
                                                 )
            vs.                                 )
                                                 )
MERCER (US), INC., MERCER HUMAN )
RESOURCE CONSULTING, INC., and, )
WILLIAM M. MERCER, INC., )
                                                 )   No. 1:08-cv-0002-HRH
                         Defendants. )
_____)

# O R D E R

## Motion to Remand

Plaintiff moves to remand this action to state court.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

## Background

Plaintiff is the Alaska Retirement Management Board, which has brought this action on behalf of the State of Alaska Public Employees' Retirement System (PERS) and the State of Alaska

---

[1] Docket No. 34.

[2] Docket No. 40.

Teachers' Retirement System (TRS). Defendants are Mercer (US), Inc., and its predecessors, Mercer Human Resource Consulting, Inc., and William M. Mercer, Inc.

Plaintiff is the trustee of the assets of PERS and TRS (collectively "the Plans").[3] The Plans provide retirement, health and other benefits to employees of over 200 participating employers,[4] one of which is the State of Alaska. Plaintiff was created by statute, AS 37.10.210, in 2005 and was "established in the [Alaska] Department of Revenue." AS 37.10.210(a). Plaintiff has nine individual trustees, two of whom are the commissioner of administration and the commissioner of revenue for the State of Alaska. AS 37.10.210(b)(1). The other seven trustees are "appointed by the governor...." AS 37.10.210(b)(2). Appointed trustees may only be removed for cause. AS 37.10.210(d). All of the trustees are citizens of the State of Alaska.

Plaintiff's powers and duties are defined by statute. AS 37.10.220. Plaintiff must "by the first day of each regular legislative session, report to the governor, the legislature, and the individual employers participating in the state's retirement systems on the financial condition of the systems[.]" AS 37.10.220(a)(13). Plaintiff must also "submit quarterly updates of

---

[3] Complaint at 4, ¶ 8, Exhibit A, Notice of Removal, Docket No. 1.

[4] Id. at 2, ¶ 2 and 7, ¶ 20.

-2-

the investment performance reports to the Legislative Budget and Audit Committee[.]" AS 37.10.220(a)(14). The State attorney general is plaintiff's legal counsel. AS 37.10.215. The Department of Revenue provides staff for plaintiff. AS 37.10.260(a). Plaintiff may own property and enter into contracts. AS 37.10.260(b) and 290. Plaintiff's expenses and operating costs are paid by the retirement funds. AS 37.10.220(c).

Mercer is a Delaware corporation with its principal place of business in New York. Mercer provided actuarial services for PERS, TRS, the Judicial Retirement System (JRS), and the National Guard/Naval Militia Retirement System.[5] Mercer began providing actuarial services in the 1970s and continued to do so until 2006. The contract between Mercer and the Department of Administration provides that "[a]ll actions concerning this contract shall be brought in the Superior Court of the State of Alaska."[6]

Plaintiff alleges that Mercer miscalculated the contributions necessary to fund PERS and TRS. In December 2007, plaintiff commenced an action against Mercer in the Superior Court of the State of Alaska. Plaintiff's complaint alleges five state law causes of action against Mercer: 1) professional negligence and

---

[5] See Contract between State of Alaska, Department of Administration, Division of Retirement and Benefits and William M. Mercer, Inc., Appendix C, Exhibit A at 5, Declaration of Michael A. Barnhill, Docket No. 36.

[6] Id. at 3.

malpractice, 2) breach of contract, 3) breach of the implied covenant of good faith and fair dealing, 4) negligent misrepresentation, and 5) unfair trade practices under AS 45.50.471. Plaintiff seeks damages of at least $1.8 billion.

On January 7, 2008, Mercer removed the action to this court based on diversity jurisdiction. In its notice of removal, Mercer asserted that plaintiff, PERS, and TRS are citizens of the State of Alaska and that it is a citizen of New York. Mercer asserted that there was complete diversity between the parties and that the amount in controversy exceeded $75,000, thereby giving this court original jurisdiction over the action.

Plaintiff now moves to remand this action to state court on two grounds: 1) it is not a citizen of Alaska for purposes of diversity jurisdiction and 2) the forum selection clause in Mercer's contract precludes litigation of this matter in federal court.

## Discussion

"Subject to certain exceptions not applicable here, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.'" California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) (quoting 28 U.S.C. § 1441(a)). "The removal statute is strictly construed against removal

jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." Id.  If the court lacks subject matter jurisdiction, it must remand the removed action. 28 U.S.C. § 1447(c); Aguon-Schulte v. Guam Election Comm'n, 469 F.3d 1236, 1240 (9th Cir. 2006).

Mercer contends that this court has original jurisdiction of this action based on diversity jurisdiction.  Federal courts have original jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).  Mercer argues that plaintiff is an unincorporated association comprised of nine Alaska citizens.  "[A]n unincorporated association ... has the citizenship of all of its members." Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

Plaintiff contends that it is an arm of the State of Alaska. A political subdivision of the state is not a "citizen" for diversity purposes if it is an arm or alter ego of the state. Moor v. Alameda County, 411 U.S. 693, 717 (1973).  If plaintiff is an arm of the state, this court lacks subject matter jurisdiction over this action and it must be remanded.

There is some disagreement between the parties on what test the court should apply to determine whether plaintiff is an arm of the state.  Mercer urges the court to apply the five-factor test for determining whether an entity is an arm of the state for purposes

of Eleventh Amendment immunity set forth in Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1988). Plaintiff suggests that the court use both the Mitchell test and the eight factors set forth in Oregon ex rel. Roberts v. Mushroom King, Inc., 77 B.R. 813 (Bankr. D. Or. 1987), to determine if it is an arm of the state.

The Ninth Circuit has never held that the Mitchell test applies to the question of whether a political subdivision is an arm of the state for purposes of diversity. But, in a pre-Mitchell case, the court observed that "[b]ecause states are not 'citizens' within the meaning of 28 U.S.C. 1332, a similar rule controls the determination of diversity jurisdiction when individual state officers or agencies are named in lieu of the state." Ronwin v. Shapiro, 657 F.2d 1071, 1073 (9th Cir. 1981). Other circuits have held that the "arm of the state" test is the same for purposes of diversity jurisdiction and Eleventh Amendment immunity. See Befitel v. Global Horizons, Inc., 461 F. Supp. 2d 1218, 1221 (D. Hawaii 2006) (collecting cases). And, this court has stated that "the analysis of a state agency's status is virtually identical whether the case involves a determination of citizenship for diversity jurisdiction or immunity from suit under the eleventh amendment." M-K Engineering Co. v. Alaska Power Auth., 662 F. Supp. 303, 304 (D. Alaska 1986). The court perceives no reason why the Mitchell test should not apply here. The court also perceives no reason to consider the Mushroom King factors in

addition to the Mitchell factors, given that Mushroom King was decided prior to Mitchell, it was a bankruptcy court case, and there are no published decisions in which the Mushroom King factors have been applied.[7]

The five Mitchell factors are

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

Mitchell, 861 F.2d at 201. In applying these factors, "the court looks to the way state law treats the entity." Id.

The first factor of the Mitchell test, which is the most important, "does not focus on whether a possible judgment against the entity would impact the state treasury." Holz v. Nenana City Public Sch. Dist., 347 F.3d 1176, 1182 (9th Cir. 2003) (quoting Eason v. Clark County Sch. Dist., 303 F.3d 1137, 1141 (9th Cir. 2002)). "Rather, 'the relevant inquiry is whether [the State] will be legally required to satisfy any monetary judgment obtained against the [entity].'" Id. (quoting Eason, 303 F.3d at 1142).

Mercer argues that Alaska law makes it clear that the State of Alaska is not legally required to satisfy a judgment against plaintiff or the Plans. Mercer's argument here is, in large part,

---

[7] There is one unpublished case, Gardner v. Mastec N. Am., Inc., No. Civ. 05-6217-AA, 2005 WL 3244351, at *2-3 (D. Or. Nov. 27, 2005), that applied the Mushroom King factors when deciding a motion for remand.

based on Holmberg v. State of Alaska, Division of Risk Management, 796 P.2d 823 (Alaska 1990). The issue in Holmberg was whether a preclusive effect should be given to determinations by the Public Employees Retirement Board (PERB) (plaintiff's predecessor), in Worker's Compensation proceedings. Holmberg argued that PERB's factual determination that she was physically unable to perform her work duties should be given preclusive effect in the appeal of a decision by the Worker's Compensation Board. Id. at 824. Although the court determined that, as a general matter, PERB determinations could be given preclusive effect in Worker's Compensation proceedings, in Holmberg's case, the court held that there could be no preclusive effect because the state was not in privity with PERS. Id. at 829. The court noted that although the Division of Retirement and Benefits contested Holmberg's claim before PERB, it was representing the interest of PERS, and not the interests of the state. Id. at 828. Holmberg argued that any award under PERS would ultimately be paid by the State. Id. But, the court concluded that an award of benefits after an administrative adjudication would not be paid for by state funds, but rather out of the PERS trust fund. The court stated that the state treasury would only be affected by an adverse award insofar as the state is a participating employer in the Plan. Id. Mercer emphasizes that the court also observed that PERS "is not a state agency but an independent retirement plan...." Id. Mercer contends that the same reasoning applies to

TRS. Mercer points out that the Ninth Circuit has held that school districts in Alaska are not arms of the state. See Holz, 347 F.3d at 1189 (finding that four out of the five Mitchell factors weighed against extending Eleventh Amendment immunity to local school districts). If a school district is not an arm of the state, Mercer argues that it follows that TRS is not an arm of the state.

Holmberg has little, if any, application here for two reasons. First, it involved res judicata, not diversity jurisdiction. The Alaska Supreme Court has stated that it does not address the status of purported state agencies "purely in the abstract" but rather "consider[s] the entity's status solely for the narrow purposes necessary to that litigation." Alaska Commercial Fishing & Agric. Bank v. O/S Alaska Coast, 715 P.2d 707, 708-09 (Alaska 1986). Under Alaska law, an entity can have a different status, depending on the nature of the case. See Guerrero v. Alaska Housing Finance Corporation, 6 P.3d 250, 258 (Alaska 2000). Second, Holmberg involved an entity other than plaintiff. The party in Holmberg was PERS, not the then-existing PERS board. But, even if Holmberg had involved PERB, there are significant differences between PERB and plaintiff. PERB was not part of the executive department, only three of its members were appointed by the governor, no members had to be commissioners of executive departments, and it was not required to report to the legislature or the Governor. Holz also

has no application here because it involved a school district, not plaintiff or TRS.

Under Alaska law, the State is required to indemnify plaintiff's members against liability for breach of their fiduciary duties. <u>See</u> AS 37.10.071(e); AS 37.10.071(f)(2)(A). Mercer's argument to the contrary, <u>Del Campo v. Kennedy</u>, 517 F.3d 1070 (9th Cir. 2008), does not make this fact irrelevant. The court in <u>Del Campo</u> considered whether a private entity under contract with the state could be an arm of the state, not whether not a statutorily created entity such as plaintiff was an arm of the state. <u>Id.</u> at 1072. Thus, it is relevant to the first <u>Mitchell</u> factor that the State would be required to indemnify plaintiff's trustees. That said, the court is aware of, and plaintiff has cited to, no authority that holds that an indemnification statute by itself justifies finding that the first <u>Mitchell</u> factor weighs in favor of the entity in question being an arm of the state.

However, at oral argument, plaintiff's counsel suggested another situation in which the State would be legally required to satisfy a judgment against plaintiff. Plaintiff's employees are state employees. If one of plaintiff's employees caused an accident during the course of his or her employment in which a third party was injured and the third party prevailed in a lawsuit against the employee, the State would be obligated to satisfy the judgment. Thus, plaintiff insists that because the State would be required to

-10-

satisfy certain judgments against plaintiff, the first <u>Mitchell</u> factor weighs in favor of finding that it is an arm of the state.

The focus of the inquiry here is whether the state is legally required "to satisfy <u>any</u> monetary judgment obtained against the [entity].'" <u>Holz</u>, 347 F.3d at 1182 (quoting <u>Eason</u>, 303 F.3d at 1142) (emphasis added). The State of Alaska would not be required to satisfy <u>any</u> monetary judgment against plaintiff. It would only be required to satisfy <u>certain</u> monetary judgments against plaintiff. At best, that fact makes this factor neutral. It does not mean that this factor weighs in favor of finding plaintiff an arm of the state.

The second factor of the <u>Mitchell</u> test requires the court to consider whether plaintiff performs a central governmental function. In determining whether an entity performs a central governmental function, the court considers whether the entity "addresses a matter of statewide rather than local or municipal concern and the extent to which the state exercises centralized governmental control over the entity." <u>Beentjes v. Placer County Air Pollution Control Dist.</u>, 397 F.3d 775, 782 (9th Cir. 2005) (internal quotation marks and citations omitted). The court must also look at whether the entity is treated as a state agency and if it is well-settled under state law that the function that the entity is performing is a state function. <u>Holz</u>, 347 F.3d at 1186.

Mercer argues that plaintiff is not providing a central governmental function. Mercer compares plaintiff to a private pension fund asset manager and contends that while this is an important role, it is not like prosecuting criminals, collecting taxes, or regulating commerce. Under Alaska law, plaintiff's "primary function is to serve as trustee of the assets of the state's retirement systems," including PERS and TRS. AS 37.10.210. Thus, Mercer argues that plaintiff only performs a central governmental function if PERS and TRS perform central governmental functions. Mercer contends that PERS cannot be performing a central governmental function because the Alaska Supreme Court has held that PERS is not a state agency. Holmberg, 796 P.2d at 828. And, if school districts are not arms of the state, which they are not under Holz, then Mercer argues that it follows that TRS is not a state agency, which, in turn, means that TRS cannot be performing a central governmental function.

Mercer also argues that it is significant that the statutes governing PERS and TRS do not state that PERS and TRS perform central governmental functions. In Holz, the court stated that "[t]o determine whether Alaska considers its public school system as performing a central governmental function, it is helpful to look at the language of other Alaska statutes to see whether they explicitly provide that an entity is performing a central governmental function." 347 F.3d at 1187. The court noted that "Chapter 14

of the Alaska Statutory Code, governing education in Alaska, does not state that school districts perform an 'essential governmental function.'" Id. The court compared this to other Alaska statutes that "explicitly state that the governmental entity is providing an essential governmental function." Id.

> Alaska Stat. § 42.40.010 provides that "[t]he continued operation of the Alaska Railroad ... is considered an essential government function of the state." Alaska Stat. § 44.85.020 provides that the exercise of authority by the Alaska Municipal Bond Bank Authority "is considered an essential governmental function of the state." Alaska Stat. § 16.51.010 provides that "[e]xercise by the [Alaska Seafood Marketing Institute] of the powers conferred by this chapter is an essential governmental function of the state." Alaska Stat. § 14.42.280 provides that the real and personal property of the Alaska Student Loan Corporation (providing student aid for post-secondary education) is "devoted to an essential public and governmental function."

Id.

The plaintiff here is the Alaska Management Retirement Board, not the Plans. The relevant inquiry is whether plaintiff is performing a central governmental function. The very fact that plaintiff's primary function, as defined by state statute, is "to serve as trustee of the assets of the state's retirement systems," is compelling evidence that plaintiff is performing a central governmental function. AS 37.10.210(a) (emphasis added). Further evidence can be found in the Alaska Constitution, which provides that "[m]embership in employee retirement systems of the State or

-13-

its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired." Alaska Const., art. XII, § 7. The fact that the people of the State of Alaska determined that retirement benefits for public employees were worthy of constitutional protection is an indication that the provision of such benefits is a central governmental function. Plaintiff also addresses a matter of state-wide concern, rather than local concern. PERS and TRS provide benefits to the employees of over 200 employers across the state, one of which is the State of Alaska. The fact that the State is only one of the participating employers does not mean that plaintiff is not performing a central governmental function. See McGinty v. New York, 251 F.3d 84, 98 (2nd Cir. 2001) ("Although the Retirement System does not service state employees exclusively, it assists in the business of the state by enabling the state to meet its pension and benefits obligations, and immunity should accordingly be extended to the Retirement System."); Kansas Public Employees' Retirement System v. Boatmen's First Nat'l Bank of Kansas City, 982 F. Supp. 806, 808 (D. Kan. 1997) (noting that the Kansas Supreme Court has held that the "investment function of KPERS is a governmental function"). That plaintiff's function involves a matter of state-wide concern is also evident in the fact that the State of Alaska has defined the purpose of both PERS and TRS in statute. See AS 39.35.001; AS 14.25.001. In sum, the provision of

retirement and other benefits and the management of the assets of the Plans is a central governmental function, and this factor weighs in favor of finding that plaintiff is an arm of the state.

As for the third factor of the Mitchell test, plaintiff concedes that it may sue or be sued in its own name. But, plaintiff contends that it cannot do so without the Attorney General's consent. Plaintiff cites to AS 37.10.215 and AS 44.23.020 to support this contention. AS 37.10.215 provides that "[t]he attorney general is the legal counsel for the board and shall advise the board and represent it in a legal proceeding." AS 44.23.020 sets forth the powers and duties of the Attorney General, which includes initiating lawsuits. Neither of these statutes expressly provide that plaintiff needs the Attorney General's consent to initiate a lawsuit. This factor weighs against finding that plaintiff is an arm of the state.

Plaintiff also concedes the fourth Mitchell factor. Because plaintiff may hold property in its own name, this factor weighs against finding that plaintiff is an arm of the state.

The fifth factor of the Mitchell test requires the court to consider the corporate status of plaintiff. This factor "is concerned with the extent to which the [entity] is ... distinct from the state." Holz, 347 F.3d at 1188.

Although plaintiff is not a separately incorporated entity, Mercer argues that plaintiff is not distinct from the state. Mercer

emphasizes that at least five of plaintiff's members are not state employees, which is true. But, the other four members are state employees. Mercer also incorrectly contends that none of the members may be removed by the governor except for cause. While the seven appointed members can only be removed for cause, the other two members serve at the governor's pleasure. Mercer also argues that plaintiff is distinct from the State because the Plans are distinct from the State. Mercer reiterates that the Alaska Supreme Court has held that PERS is not a state agency but rather is an independent retirement plan. Thus, Mercer argues that plaintiff is distinct from the State and "represents the interests" of the retirement system, "not the interests of the state." Holmberg, 796 P.2d at 828.

Plaintiff is not distinct from the state. Plaintiff was created by statute and was "established in the Department of Revenue." AS 37.10.210(a). Its trustees are appointed by the governor, almost half of its trustees are state employees, and it is subject to extensive statutory reporting requirements. Its legal counsel is the Attorney General of the State of Alaska, and it is immune from state taxation. The fifth Mitchell factor weighs heavily in favor of finding that plaintiff is an arm of the state.

After weighing all the Mitchell factors, the court concludes that plaintiff is an arm of the state. Although the third and fourth factors weigh against finding that plaintiff is an arm of the

-16-

state, the second and fifth factors weigh in favor of finding that plaintiff is an arm of the state. The first factor, considered the most important, is neutral. But, even if the first factor weighed against finding that plaintiff was an arm of the state, the court would still conclude that plaintiff is an arm of the state. The first Mitchell factor is usually given additional weight because 'the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury....'" Beentjes, 397 F.3d at 778 (quoting Savage v. Glendale Union High School, 343 F.3d 1036, 1041 (2003)). Because here we are determining whether plaintiff is an arm of the state for diversity purposes, and not for Eleventh Amendment purposes, the importance of the first factor is somewhat diminished. And, here, the fifth factor weighs heavily in favor of finding that plaintiff is an arm of the state.

The court finds support for its conclusion that plaintiff is an arm of the state in Alaska Cargo Transport, Inc. v. Alaska Railroad Corporation, 5 F.3d 378 (9th Cir. 1993). There, the Ninth Circuit found that the first, third, and fourth Mitchell factors weighed against immunity, but that the second and fifth factors weighed in favor of immunity. Id. at 380-82. Nonetheless, the Ninth Circuit concluded that the Railroad Corporation was an arm of the state. The court emphasized the "essential" governmental function the Railroad Corporation performed and was persuaded that "a money judgment against [the Railroad Corporation] likely would

impact Alaska's treasury because of the state's strong interest in keeping [the Railroad] operationally and fiscally sound." Id. at 382. As for the fifth factor, the court noted that although the Railroad Corporation had a separate corporate status, it was far from "autonomous" because the governor appointed all of its board members, two of whom were state officials, and the Railroad Corporation needed legislative approval to "issue bonds, expand its rail lines, ... sign long-term leases..., issue[] shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, [and] engage in business for private benefit." Id. at 381-82.

Here, plaintiff is much less autonomous than the Railroad Corporation, in that it is a part of the Department of Revenue, all of its employees are state employees, and almost half of its trustees are state employees. In addition, plaintiff is subject to extensive statutory reporting requirements. Furthermore, like the Railroad Corporation, plaintiff performs a central governmental function, providing benefits to public employees, one of which is afforded constitutional protection.

Because plaintiff is an arm of the state for purposes of diversity jurisdiction, the court lacks removal jurisdiction over this action and it must be remanded to state court. Because the court has determined that plaintiff is an arm of the state, it need not consider plaintiff's alternative argument that there is not

complete diversity here. Because the court lacks subject matter jurisdiction over this action, it cannot consider plaintiff's alternative argument that Mercer contractually waived its right to remove.

## Conclusion

Based on the foregoing, plaintiff's motion to remand[8] is granted.

DATED at Anchorage, Alaska, this <u>7th</u> day of November, 2008.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[8] Docket No. 34.